## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

v.

Case No.: 3:25-CR-179

TONY LEROY BARTLEY,
Defendant.

### SENTENCING MEMORANDUM

Defendant TONY LEROY BARTLEY files this memorandum to assist the Court with the sentencing scheduled for April 21, 2026.

On June 17, 2025, the Federal Bureau of Investigation (FBI) initiated an "online undercover operation" on a popular social media site. A profile was created for use during the investigation to interact with adults, initially online, later by telephone, and sometimes later in person prior to an arrest. In its profile, the undercover FBI agent utilized a photograph of a young girl to search for individuals and initiate an engagement of sexual activities. The defendant had previously established an account on the social media site "Meet-Me" and responded to the undercover FBI agent's photograph.

In the case at bar, the act started with three (3) internet messages, conducted on three (3) separate days, between the defendant and an undercover FBI agent posing as a minor. The conversation continued by text on July 29, 2025, and the undercover agent revealed by text for the first time that 'she' was age 13. The defendant continued to engage in explicit sexual conversation and exchanged facial photographic pictures. In addition, Tony Bartley forwarded a photograph of himself holding his erect penis.

1

This led to the Defendant's arrest on August 5, 2025, and his cooperation with law enforcement. Tony Bartley voluntarily admitted to his inappropriate conversation and crime. He was later indicted on one count of violation of 18 USC 2422(b) (an attempt to entice a minor to engage in illicit sexual activity). Since his arrest, the defendant has been incarcerated in Starke, Bradford County, Florida. On January 27, 2026, the Defendant entered into a Plea Agreement and admitted to his criminal act which brings him before the Court.

The plea agreement makes repeated references to a "child"; it could also be written as a "fictitious child". It is undisputed that the charged conduct arose from a law-enforcement sting operation involving an undercover agent always posing as a young female child, and that no actual child or actual victim exists. All communications were conducted with an adult undercover-law enforcement agent and no communications occurred with any actual child. There is no evidence in the record to suggest that this defendant made any inappropriate or illegal sexual communications to any minors at any time prior to the instant arrest. The defendant voluntarily surrendered his cell telephone to law enforcement which was examined by its experts. The government was unable to find any inappropriate or sexual oriented conversations or pornography other than as indicated in the record and the conversations between the defendant and the undercover agent posing as a young female child. There is no evidence that Tony Bartley physically met any actual underage victim at any time.

This memorandum respectfully submits that the minimum mandatory sentence of ten (10) years, one hundred twenty (120) months, would be "sufficient but not greater than

2

necessary" to fully meet the purposes of 18 USCA 3553(a). "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensure." Koon v. United States, 518 US 81, 113 (1996).

## PSIR ADVISORY GUIDELINES RANGE

The Presentence Investigation Report ["PSIR"], using the 20025 Guidelines Manual and amendments, calculated a total offense Level of 29 which, with the calculated criminal history (CH 1), resulted in a guideline range of 87 – 108 months.

Tony Bartley has zero criminal history points. However, Tony Bartley does not qualify for an adjustment because of the sex offense. USSG 4C1.1(a)(5) The defendant has clearly demonstrated acceptance of responsibility for the offense. He timely notified authorities of his intention to enter a plea of guilty.

The United States has agreed to recommend that Tony Bartley receive a sentence at the low end of the applicable guideline range. Plea Agreement, Page 4 Paragraph #6.

The PSIR notes, since "the statutory required minimum sentence of 10 years is greater than the maximum of the applicable guidelines range; therefore, the guideline term of imprisonment is 120 months." PSIR at P. 13 #69.

The defendant has no unresolved objection to the PSIR.

## CONSIDERATION OF SECTION 3353(a) FACTORS

### (1)    Circumstances and Characteristics

Under 18 USC Section 3553(a)(1), a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant". Over a two-day period in the summer of 2025, FBI Agent Daniel R. Moxley (in the guise of a 13-year-old girl) conducted three (3) separate messages on the internet with Tony Bartley. On July 29, 2025, SA Moxley (again as an undercover agent) interacted with Bartley via text messages. During the July 29, 2025, interaction, for the first time, the Special Agent stated to Tony Bartley that "she" was 13 years old. Bartley replied that he was age 37 and suggested descriptive sexual acts. The parties exchanged facial photographs; Bartley sent the undercover agent an additional picture of a fully erect adult penis. Shortly thereafter, Tony Bartley ended the text conversation with the Special Agent. Mr. Bartley and did not communicate again in any form with the Special Agent. The following day, July 30, 2025, the Special Agent sent Bartley four (4) text messages in an effort to re-engage Bartley in additional sexual communications. Tony Bartley did not respond to any of these four (4) texts messages. PSIR P. 13. There is no evidence that Tony Bartley made any effort to Physically meet with the Special Agent acting as a minor child. After his arrest, Tony Bartley waived his right to counsel and admitted to the inappropriate criminal behavior. PSIR P.7 P.14.

After his arrest, Tony Bartley agreed to a psychiatric and psychosexual evaluation by Jennifer M. Rohrer, Ph.D., a licensed psychologist in Jacksonville, Florida. Dr. Rohrer interviewed Tony Bartley and administered a battery of tests. The confidential report has

been provided to the Court via the US Probation Office and is included with the Presentence Investigation Report. The remaining details in this section have largely been drawn from that report, the PSR, educational certificates and diplomas and various character letters are attached as exhibits.

**(2) History and Characteristics of Tony Bartley**

Tony Bartley grew up to age 10 in a family of five; himself together with two sisters, Tatyana Bartley, age 26, a childcare aide and Naomi King, age 25, a health care employee of Northeast Florida State Hospital, MacClenny, Florida. FSIR P. 10, P. #39, 40. At age 10, his parents divorced. His mother later remarried but that second marriage also ended by divorce when the defendant was 15 years old. Tony Bartley reported having a "great" childhood with his father, together with a history of sexual abuse by the stepfather. PSIR P.10, P#41-42.

Since 2022, Tony Bartley has been in a romantic relationship with Sharde Wright, age 39. Ms. Wright relocated to Florida from New York in order to establish a family with Tony Bartley. The two lived together with two of Ms. Wright's three children, a son, K.W., age 19, and a daughter S.B., at 9. After Tony Bartley's arrest, Ms. Wright lost their Jacksonville apartment, as well as her position as an assistant manager with Lowe's. She has returned to upstate New York where she has family. Shortly before Tony Bartley's arrest, Ms. Wright suffered a miscarriage. The defendant desires to reunite with Ms. Wright; as evident from the character letter attached, Exhibit #2A, Ms. Wright is supportive of the man she calls her fiancé.

In 2014, Tony Bartley graduated from Florida Atlantic University with a bachelor's degree in early care and education. He completed the statutory certificate requirements required by the Florida Department of Children and Families (FDCF) for employment in day care facilities. During his incarceration in the Bradford County Jail, Tony Bartley completed numerous online classes. The Bradford County Jail Program Coordinator provided a summary of his educational achievements and certificates as contained attached as exhibits.

(a) CRI-Court Completion Certificates: 20 Certificates, including but not limited to "Anger Management", "Behavior Change", "Conflict Resolution", "Family and Community Reunification"; with notation from the Coordinator: "There were only 20 courses available – he did them all."

(b) EDOVO Transcript and Certificates of Completion: 14 EDOVO Course Completion Certificates, including, but not limited to, "How Can I Heal from Child Sexual Abuse"; "Faith of a Felon"; "Parenting While Incarcerated"; "How do I change"; "Prisoner Reentry Network".

In 2022, Tony Bartley took a teaching job as an early education teacher at Bright Horizons in Boynton Beach, Florida. In 2023, he relocated to Jacksonville, Florida for a position with Amazing Explorers Academy in Ponte Vedra Beachy, Florida. Tony Bartley was considered a regarded VPK Teacher until he was terminated based on his arrest on the instant offense. There has been no suggestion that Tony Bartley interacted sexually or inappropriately with any student during his employment. In 2024-2025, Tony Bartley supplemented his teaching income as a delivery driver at Door Dash. Shortly before his arrest, Tony Bartley was financially broke yet sent his supplement Door Dash monies to his fiancé, Ms. Wright, for household expenses and transportation costs in travel with her children to Florida from New York by automobile.

Character letters in support of Tony Bartley are attached as Appendix #2. These character letters describe Tony Bartley as a man with many admirable qualities, explaining that he "demonstrated a strong work ethic, a dedication to his students, and a genuine passion for education . . . Tony always acted appropriately to his students; their parents; and fellow coworkers, never overstepping or acting inappropriately." Teacher J. Teschendorf, Ex. 2D; "an outstanding member of our team and a role model for the children and families we serve . . . whether supporting a colleague, helping a parent, or guiding a child, Tony Bartley approached every task with care and professionalism." Teacher, M. Lazier. Ex. 2G.; "a person of integrity" S. Ruise Ex. 2A; a "devoted family member", N. King, Ex. 2B.

Mr. Bartley's supervisor at his prior job at the Deray Beach Academic Center, Mary Lazier, writes, "I have personally witnessed his positive conduct in situations such as working around children. His interaction with children never raised any suspicions to where he would never harm a child in any way possible. I have never heard any parent complaints about Tony." Ex. 2F. In an earlier letter, Mary Lazier, stated, Tony Bartley "went above and beyond in his role, ensuring that the social, emotional, and academic needs of the children were met. His commitment to their growth and well-being was evident in the thoughtful and intentional way he engaged with them." Ex. 2G.

A co-worker, Jilliam Teschendorf, currently employed at Amazing Explorers Academy, referred to Tony Bartley's "strong work ethic, a dedication to his students, and a genuine passion for education." She writes, "Tony always acted appropriately to his students, their parents, and fellow coworkers, never overstepping or acting

inappropriately." She concludes, "He made clear that the success and well-being of his students came first, and he sought ways to improve curriculum and classroom dynamics for the benefit of everyone. Tony was a fantastic teacher who went above and beyond for his students and fellow co-teachers. Ex. 2D.

His sister, Naomi King, with whom he is close, referred to him as "a loving son, a devoted brother, . . . [ a man who is] supportive, family-oriented and respectful." Ex. 2B. His uncle, Sirrah N. Ruise, his cousin, Jalishia Ruise, and mother, Danita King, writes about Tony Bartley's character, his potential, and meaningful steps to change his life. Ex. 2A; 2C; 2 E.

Counsel calls the Court's attention to the character letter submitted belatedly by Tony Bartley's fiancé, Sharde Wright. Ms. Wright's letter provides a valuable perspective regarding the defendant's character. She writes that Tony Bartley "has always been a kind, respectful, and hardworking man. . . . He treats my children as his own and has played an important role in their lives especially for my son, who was struggling to finish high school. Tony took the time to mentor him, encourage him, and motivate him to graduate and enroll in college. My son now looks up to Tony as a father figure." Ms. Wright continues, in part, "Tony's influence has always been positive. He has never led my children or anyone I've seen down the wrong path. He has offered stability, compassion, and support, especially during difficult times in my life." She concludes, "to my knowledge, Tony has no criminal record. He may have had minor issues like traffic tickets, but he has never been involved in criminal activity. I know in my heart that he is a good man who deserves a second chance.

. . . I hope you can see the man we know and care about not just what's been presented in court." Ex. 2H.

It is this disconnect between Tony Bartley's outward character and the offense he has pleaded guilty to led to a psychosexual evaluation of Tony Bartley. A series of interviews and tests were conducted for the assessment of the risk of sexual reoffending. In her evaluation, Jennifer M. Rohrer, Ph.D., a licensed psychologist in Jacksonville, Florida, assessed static risk factors supplemented with dynamic risk factors. These factors together with an individual's criminal history, family and social background, mental health history, sex offender treatment history, and diagnosis of a mental disorder contribute to a comprehensive evaluation of a person's risk for sexual re-offense. Protective factors also mitigate an offender's risk of future sexual re-offense.

Dr. Rohrer reviewed an established risk assessment instrument, the Static-99R, which provides moderate accuracy in ranking individuals according to their relative risk for sexual recidivism from a score of -3 to 12, and scored Tony Bartley of 2 which places him in average risk for being charged or convicted of another sexual offense. Such a score was based on an unrelated victim, a stranger, and not having lived with a lover for at least two years. This places him in the 48th percentile. However, the Static-99R prediction refers to groups, not specific individuals.

Dr. Rohrer also reviewed additional factors categorized as dynamic risk factors that also apply to assessing risk for sexual recidivism. She identified three factors that could *potentially* increase Tony Bartley's risk assessment: Sexual preference for prepubescent or pubescent children (females aged 0 to 12; males aged 0 to 13); sexual preoccupation; and

lack of emotionally intimate relationship with adults.  Such factors are not discovered in this evaluation of Tony Bartley.

More importantly, Dr. Rohrer found no evidence that Tony Bartley was susceptible to recognized risk factors of multiple paraphilias; sexual violence; resistance to rules and supervision; lifestyle impulsivity; general self-regulation problems; emotional congruence with children; negative social influences; grievance/hostility; offense supportive attitudes; or poor problem solving.

In her summary and conclusion, Dr. Rohrer found, based on an actuarial measure, Mr. Bartley's risk assessment indicates average risk for sexual  recidivism. However, with the consideration of dynamic and protective factors, it is her opinion that **Mr. Bartley's risk for sexual re-offense is low.**

The doctor concludes:

> **It is notable that Mr. Bartley has accepted responsibility and remorse for his offense -related conduct; cooperated with the law enforcement investigation and interview; had an extremely limited criminal history consisting of a misdemeanor traffic-related offense; has the support of his father and former fiancé and is unlikely to sexual reoffend. I understand that Mr. Bartley will be ordered to participate in psychosexual treatment and register as a sexual offender in this case (however, it is my opinion that neither is indicated by the results of this investigation).** (emphasis supplied). Evaluation at P. 8.

For these reasons, and under these circumstances, a guideline sentence of 120 months imprisonment would be "sufficient but not greater than necessary" to meet the purposes of 18 USCA 3553(a).

### (3) Respect for the Law, Deterrence, Public Safety, Rehabilitation

Under Section 3553(a)(2), the sentencing court must also consider the need for the sentence imposed - (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Since his arrest, Tony Bartley has recognized that his own actions would necessarily result in incarceration for the next ten years. He has been continuously incarcerated since August 5, 2025. The stated goals of Section 3553(a)(2)(A, - just punishment and specific deterrence – are fully met in this sentence.

Tony Bartley has also suffered various collateral consequences of his conduct, including his arrest, months of incarceration pending sentencing, the loss of his job and career, and the relocation of Ms. Wright and her children, with whom he developed a rich and meaningful relationship. It has affected his physical health and mental health. This is more than a personal tragedy as it has affected Tony Bartley's family and friends, too.

The goal of Section 3553(a)(2)(B) (general deterrence) is also advanced, as investigations and prosecutions such as this one serve to remind the public that law enforcement actively seek violators for arrest and prosecution. The goal is met by the defendant's lengthy sentence.

For these reasons, and under these circumstances, a sentence of 120 months imprisonment, followed by 5 years supervised release, would be "sufficient but not greater than necessary" to meet the goals of 18 USCA 3553(a).

### (4) Available Sentences

Under Section 3553(a)(3) the sentencing court must also consider "the kinds of sentences available." In this case, the PSIR notes, the statutorily minimum sentence of ten (10) years is greater than the maximum of the applicable guideline range, the guideline term of imprisonment is 120 months. PSIR~~A~~. P.13 ¶ 69 Therefore, the Court cannot impose an alternative sentence such as probation, house arrest, or a split sentence – only incarceration is permitted.

In this case at bar, a sentence of 120 months imprisonment, followed by 5 years supervised release, would be "sufficient but not greater than necessary" to meet the goals of 18 USCA 3553(a).

### (5) Sentencing Policy

Under Section 3553(a)(5), the sentencing court should consider "any pertinent policy statement" issued by the Sentencing Commission. Undersigned counsel is not aware of any such policy statement.

### (6) Avoiding Disparities

Under Section 3553(a)(6), the sentencing court must also consider "the need to avoid unwarranted sentence disparities" among similarly situated defendants. In the case of a statutory minimum mandatory sentence, 18 USC 3553(a)(6) does not weigh against the imposition of the minimum mandatory sentence of 120 months incarceration.

12

**(7) Restitution**

Under USSC 3553(a)(7), the sentencing court must also consider "the need to provide restitution to any victims of the offense". In the present case, this factor does not weigh against the imposition of a term of imprisonment of 120 months, as restitution is not applicable in this case. PSIR P. 15 P. 81.

SUMMARY

Tony Bartley submits that there are several factors which suggest a minimum mandatory sentence term of 120 months is appropriate. Tony Bartley:

- Cooperated with law enforcement and voluntarily gave a full and complete statement. He voluntarily surrendered his cell phone to law enforcement. He timely entered into a plea agreement saving the government time and the expense of a trial.

- Accepted responsibility and is remorseful

- Has no prior felony criminal record; only misdemeanor traffic citation

- Is unlikely to reoffend, and

- Has a supportive family

Also, present in the plea agreement, the Government agreed to recommend that the defendant be sentenced to the "low end of the applicable guideline range", that is, a term of 120 months imprisonment.

In light of these considerations, Tony Bartley suggests that the guideline sentence of 120 months imprisonment, followed by five (5) years of supervised release, as "sufficient but not greater than necessary" to meet the purposes of 18 USCA 3553(a).

13

### (8). Conditions of Supervision and Location of Incarceration

The defendant recognizes that he will be under federal supervision, and in addition, subject to additional terms and conditions of release under state law. The federal statute provides a mandatory minimum term of supervised release of five years applies to the case at bar. 18 USC 3583(k).  The statute also makes several conditions mandatory regardless of the crime of conviction: refrain from criminal activity; forgo the unlawful possession of controlled substances; refrain from the unlawful use of controlled stances and submit to periodic drug tests; cooperate with collection of DNA samples; prior to release, agree to adhere to the payment schedule for any unpaid fine imposed; pay any remaining restitution and special assessment balances; register with relevant authorities if federal sex offender registry requirements apply; and commit no new crimes which encompasses offenses under federal, state, or local law. It also prohibits the unlawful possession or use of controlled substances, including medical marijuana.

The Sentencing Guidelines quote some of the statutorily identified discretionary conditions, suggest expanded versions of others, and propose additional considerations in still other situations. USSG 5D1.3 Discretionary conditions are divided into three groups— Thirteen "standard" conditions, which courts impose as a matter of practice in most cases; USSG 5D1.3(c); eight "special" conditions that may be applied to particular kinds of cases; 5D1.3(d) and six "additional" conditions. 5D1.3(e).

The USSG 5D1.3 (c ) standard conditions detail reporting requirements; instructions; travel; answer truthfully to questions; residence at an approved location; visit

14

by Probation Officer, employment; communication with felons; notification upon arrest; firearms; disclosure of agreements with law enforcement; notification to third parties; and instructions.

The so-called special discretionary conditions under 51.3(d) provide eight special conditions which include requirements that direct the defendant to: support his dependents; satisfy his debt obligations; provide the probation officer with financial information; abstain from controlled substances and alcohol and participate in a substance abuse treatment program; participate in a mental health program; adhere to deportation requirements; participate in a sex offender treatment program; refrain from computer use; submit to searches; notify the probation officer of a change in economic circumstances.

The Sentencing Guidelines identify six other, "additional" conditions which address a defendant's mobility and work activities. USSG 5D1.3(e ) They include community confinement ["residence in a community treatment center, halfway house, restitution center, mental health facility, alcohol or drug rehabilitation center, or other community facility "] ; home detention ["a program of confinement and supervision that restricts the defendant to his place of residence continuously, except for authorized absences, enforced by appropriate means of surveillance by the probation office. When an order of home detention is imposed, the defendant is required to be in his place of residence at all times except for approved absences for gainful employment, community service, religious services, medical care, educational or training programs," and at such other times as may

15

be specifically authorized] ; community service; curfew; and restrictions on a defendant's occupation.

As to special conditions outlined in USSG 5D1.3(d), the defendant acknowledges that as part of the terms and conditions of supervised release the Court will order as special conditions sex offender mental health treatment, sex offender registration, prohibitions as to computers and smart phones, together with searches of his dwelling and possessions. Tony Bartley also understands the court may restrict contacts with minor children. Tony Bartley agrees to not visit, frequent, or remain at any place where children under the age of 18 normally congregate (public parks, playgrounds, etc.) or any business that caters to and/or targets child customers.

The defendant respectfully requests that such restriction of contact with minor children does not prohibit his visiting or residing at a residence occupied by Ms. S. Wright and her third child, S.B., with the prior written approval of Ms. Wright. At the time of his release, two children of Ms. Wright will be adults and over the age of 18. The Youngest child will be approximately 16 years of age. Ms. Wright is well placed to assess whether Tony Bartley poses a danger to a particular child. Prior approval before a sexual offender has contact with a minor child is a reasonable means of ensuring that such contact remains appropriate.

The Guidelines provides guidance as to the place of residence under supervised release. "The defendant's place of residence, for purposes of home detention, need not be the place where the defendant previously resided. It may be any place of residence, so long as the owner of the residence (and other person(s)), from whom consent is necessary,

agrees to any conditions that may be imposed by the court, e.g., conditions that a monitoring system be installed, that there will no 'call forwarding,' or "call waiting' services or that there will be no cordless telephones or answering machines." USSG 5F1.2 cmt. n.3.

A restriction which precludes Tony Bartley from visiting or residing with his fiancé and her minor child in Ms. Wright's home is not "reasonably related" to various sentencing factors, including the nature of the offense and the characteristics of the defendant. Such a condition is a greater deprivation of liberty than is reasonably necessary to deter crime, protect the public and rehabilitate the defendant. Id. § 3583(d)(2). This is not a pornography case. Tony Bartley is a first-time offender. The subject case involves a fictitious child and investigation by an FBI agent. The charges are for attempted sexual crime. He did not suggest or attempt to contact the agent in person. He has no propensity for violence. The psychological evaluation indicates that Mr. Bartley's risk for sexual re-offense is low. The evaluation also opines that psychosexual treatment and registration as a sexual offender is not indicated by the results of this investigation. (Evaluation at p.8).

As to the location of his incarceration, Tony Bartley asks that the Court recommend incarceration at the Federal Correctional Complex (FCC) in Butner, North Carolina. The defendant recognizes that the US Bureau of Prison places inmates within 500 miles of their primary residence. Such venue is close to the defendant's family members in North Carolina and equal distance between his Jacksonville, Florida family, his fiancé and her children who reside in Monticello, New York. It will also provide medical and psychological treatment as well as educational opportunities beneficial to the defendant.

17

## CONCLUSION

For the reasons stated above, and based on the plea agreement, the PSIR, the confidential psychosexual evaluation, and other materials before the Court, Tony Bartley requests that the Court impose the minimum mandatory sentence of 120 months to be followed by a 5-year term of supervised release with special conditions that contact with his fiancé's third child, a minor child, be permitted with the finance's express written authorization.

March 31, 2026

/s/ Clyde M. Collins, Jr., Esquire
Florida Bar No. 0342688
4446-11A Hendricks Avenue #208
Jacksonville, Florida 32207
904/982-7382
clydemcollinsjr@aol.com

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 31, 2026, a copy of the foregoing has been furnished via ECF to counsel for the government, Rodney Brown, Assistant US Attorney, Bryan Simpson US Courthouse, 300 Hogan Street, 700, Jacksonville, Florida 32202.

/s/ Clyde M. Collins, Jr., Esquire
Florida Bar No. 0342688
4446-11A Hendricks Avenue #208
Jacksonville, Florida 32207
904/982-7382
clydemcollinsjr@aol.com

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,

v.                                                    Case No.: 3:25-CR-179

TONY LEROY BARTLEY,
Defendant.

APPENDIX TO SENTENCING MEMORANDUM

EXHIBIT 1      BARTLEY, TONY: COURSE PARTICIPATION, COMPLETIONS & CERTIFICATES
               BRADFORD COUNTY JAIL, STARKE, FLORIDA

EXHIBIT 2      CHARACTER LETTERS TO THE COURT

               A: Uncle,  Sirrah N Ruise

               B: Sister,  Naomi King

               C: Cousin, Jalishia Ruise

               D: Teacher, Jillian Teschendorf

               E: Mother, Duanita King

               F: Supervisor, Mary Lazier    9/21/25

               G: Supervisor, Mary Lazier 2/6/26

               H: Fiancé, Sharde Wright

EXHIBIT 3      LETTER TO COURT FROM TONY BARTLEY

EXHIBIT 4      PHOTOGRAPHS


**Note: Exhibits will be provided on paper copy by hand delivery and are not attached to
the ECF pleading filed with the Clerk of Court**